UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) ) ) | |
| vs. | ) | 1:10-cv-138-SEB-DKL |
| $99,000 UNITED STATES CURRENCY, | ) ) ) | |
| Defendant, | ) ) | |
| Brent Hutchinson, | ) ) | |
| Claimant. | ) | |

**ORDER DENYING CLAIMANT'S MOTION TO DISMISS**

This matter comes before the Court on Claimant's motion to dismiss the complaint for forfeiture for lack of jurisdiction [Docket No. 16], pursuant to Fed. R. Civ. P. 12(b). For the reasons detailed below, Claimant's motion to dismiss is DENIED.

FACTUAL BACKGROUND

On January 24, 2009, Sergeant Paul McDonald of the Indianapolis Metropolitan Police Department ("IMPD") made a traffic stop and arrested claimant Brent Hutchinson (hereinafter "Claimant" and "Hutchinson") for driving while his license was suspended. A search of Hutchinson's person and vehicle revealed a loaded handgun, a large amount of narcotics, and $14,632 cash. All of the evidence was secured and placed in the IMPD property room with a hold for forfeiture. On March 9, 2009, the State of Indiana, Marion

County, filed a Complaint for Damages, Forfeiture of Property, Seizure of Assets and for Injunctive Relief (hereinafter "racketeering complaint") in relation to the Claimant's participation in a corrupt business enterprise by dealing in cocaine. The Marion County Superior Court issued an Order of Seizure and Restraining Order, enjoining Hutchinson from disposing of or transferring any of his property, and ordered the immediate seizure of any and all assets he possessed in any account or lockbox at his financial institution.

On September 14, 2009, the IMPD received an anonymous phone call providing information that a safe and money belonging to Hutchinson was being held by Dawn McGill, his girlfriend, in her apartment. The following day, police executed a search warrant for the apartment and discovered a safe in a laundry basket containing the $99,000.00 *res* at issue in the instant action. The property was seized under the authority of the Marion County Superior Court.

On February 3, 2010, before a state turnover order was issued, this federal forfeiture complaint was filed relating to the defendant *res*. On May 6, 2010, the Marion County Superior Court executed a turnover order transferring the defendant *res* to federal authorities to pursue the instant forfeiture action. On September 13, 2010, Claimant filed the instant motion to dismiss, arguing that the district court lacked jurisdiction to conduct federal forfeiture proceedings because the state court's turnover order was invalid. Claimant also argues that the defendant *res* is under the state court's jurisdiction, rather than the federal court's.

DISCUSSION

Claimant argues that federal authorities failed to obtain a valid turnover order from the state court for the defendant *res*, thereby depriving this court of jurisdiction in the instant forfeiture action. Claimant contends, first, that the turnover order is invalid because it was issued after the forfeiture complaint was filed in federal court. Claimant contends, alternatively, that the turnover order is invalid because it was issued outside the statutory time period for doing so under Indiana state law. We address these arguments in turn.

I. A Federal Forfeiture Complaint May Be Filed Before the State Court Issues a Turnover Order.

Indiana Code ("IC") § 35-33-5-5 and IC § 34-24-1-3(a) establish the requirements for jurisdiction over seized property and state forfeiture proceedings. IC § 35-33-5-5 provides in relevant part:

> (a) All items of property seized by any law enforcement agency as a result of an arrest, search warrant, or warrantless search, shall be securely held by the law enforcement agency under the order of the court trying the cause, except as provided in this section.
>
> . . .
>
> (c) Following the final disposition of the cause at trial level or any other final disposition the following shall be done:
>
> (1) Property which may be lawfully possessed shall be returned to its rightful owner, if known. If ownership is unknown, a reasonable attempt shall be made by the law enforcement agency holding the property to ascertain ownership of the property. After ninety (90) days from the time:
>
> (A) the rightful owner has been notified to take possession of the property;

> or
>
>> (B) a reasonable effort has been made to ascertain ownership of the property;
>
> the law enforcement agency holding the property shall, at a convenient time, dispose of this property at a public auction. The proceeds of this property shall be paid into the county general fund.
>
> . . .
>
> (j) Upon motion of the prosecuting attorney, the court shall order property seized under IC 34-24-1 transferred . . . to the appropriate federal authority for disposition under 18 U.S.C. 981(e), 19 U.S.C. 1616(a), or 21 U.S.C. 881(e) and any related regulations adopted by the United States Department of Justice.

Indiana Code § 34-24-1-3(a) provides in relevant part:

> (a) The prosecuting attorney for the county in which the seizure occurs may, within ninety (90) days after receiving written notice from the owner demanding return of the seized property or within one hundred eighty (180) days after the property is seized, whichever occurs first, cause an action for reimbursement of law enforcement costs and forfeiture to be brought by filing a complaint in the circuit, superior, or county court in the jurisdiction where the seizure occurred. The action must be brought:
>
>> (1) in the name of the state or the state and the unit that employed the law enforcement officers who made the seizure if the state was not the employer; and
>>
>> (2) within the period that a prosecution may be commenced under IC 35-41-4-2 for the offense that is the basis for the seizure.

Civil forfeiture actions are *in rem* proceedings governed by the longstanding rule that "when state and federal courts each proceed against the same *res*, 'the court first assuming jurisdiction over the property may maintain and exercise that jurisdiction to the exclusion of the other.'" *United States v. One 1979 Chevrolet C-20 Van*, 924 F.2d 120,

121 (7th Cir. 1991) (quoting *United States v. $79,123.49 in United States Cash and Currency*, 830 F.2d 94, 96 (7th Cir. 1987)). The purpose of this rule is "to avoid 'unseemly and disastrous conflicts' in the administration of our dual judicial system and to protect the judicial processes of the court first assuming jurisdiction." *United States v. $84,940 United States Currency*, 86 Fed. Appx. 978, 982 (7th Cir. 2004) (quoting *$79,123.49*, 830 F.2d at 96); *see also United States v. $506,231 in United States Currency*, 125 F.3d 442, 447 (7th Cir. 1997). "Once a state court has assumed jurisdiction over a *res*, a federal court cannot assert jurisdiction over the same *res* until it has been transferred pursuant to state statute or by a turnover order from the state court." *Id.* (citing *United States v. One 1987 Mercedes Benz Roadster*, 2 F.3d 241, 243 (7th Cir. 1993); *C-20 Van*, 924 F.2d at 122).

Indiana law requires property seized under the authority of a state court's search warrant to be held "under the order of the court trying the cause." IC § 35-33-5-5(a). The property may be transferred to the appropriate federal authority upon motion by the prosecuting attorney and an order from the court to transfer the property. IC § 35-33-5-5(j). Without a turnover order, "there [is] no valid transfer of jurisdiction from the state court, so that the federal forfeiture proceed[s] without jurisdiction over the *res*." *Martin v. Indiana State Police*, 537 F. Supp. 2d 974, 987 (S.D. Ind. 2008).

Claimant asserts that, before a federal complaint for forfeiture can be properly filed, federal authorities must first obtain jurisdiction over the property through a valid turnover order. The Seventh Circuit discussed the timing between filing a forfeiture

complaint and acquiring jurisdiction over the *res* in *United States v. $506,231 in United States Currency*, 125 F.3d 442 (7th Cir. 1997). In *$506,231*, Chicago police seized the defendant currency and held it until further order of the court, pursuant to Illinois law. *Id.* at 444-45. The state court ordered the currency returned to the claimants, and ordered the property custodian "not to transfer the property to any other persons or the United States." *Id.* at 445. Two days before the state court's order, however, the United States filed a forfeiture claim over the property with the district court. *Id.* The next day, upon learning of the state's intention to return the property, the United States moved and the district court granted an emergency motion ordering the claimants to deliver the property to the United States Marshals Service for federal forfeiture proceedings immediately upon the property's return by the state court. *Id.* at 446. Similar to the present case, the claimants filed a motion to dismiss for lack of jurisdiction, arguing "that at the time the government filed its complaint for forfeiture, the district court did not possess the defendant *res* and, therefore, the district court had no jurisdiction over it." *Id.* The district court denied the motion, holding that "while jurisdiction over the *res* is necessary to proceed against the property and secure its forfeiture, it is not necessary to have obtained such jurisdiction the moment the complaint for forfeiture is filed . . . ." *United States v. $506,641 in United States Currency*, No. 93-c-1603, 1993 WL 398786, at *4 (N.D. Ill. Oct. 6, 1993), *rev'd sub nom. $506,231*, 125 F.3d at 448.

Upon review, the Seventh Circuit held "the district court is partially correct; the property need not be under the Court's control the moment the complaint for forfeiture is
6

filed *if no one else is asserting jurisdiction over the control and disposition of the property.*" *$506,231*, 125 F.3d at 448. (emphasis in the original). The Seventh Circuit found that "the state court explicitly exercised its own jurisdiction to the exclusion of the federal court and did not intend to transfer the property directly to the federal authorities." *Id.* Therefore, the Seventh Circuit held that the district court lacked jurisdiction and could only acquire jurisdiction through a turnover order by the state court. *Id.* at 450.

As made clear by the holding in *$506,231*, the filing of a forfeiture complaint before the issuance of the turnover order in the present case does not necessarily deprive this Court of jurisdiction. Rather, the complaint may proceed so long as "no one else is asserting jurisdiction over the control and disposition of the property." Unlike *$506,231*, where the state actively and exclusively exercised jurisdiction over the *res*, in the case at bar the state court has brought no forfeiture proceedings against the defendant *res*. The state, in *$506,231*, did not intend to transfer the property to the federal authorities and the state court in that case explicitly ordered that the property was not to be delivered to the United States. In the present case, however, nothing in the record shows the state taking action to "assert jurisdiction over the control and disposition of the property." Rather, the state court simply held the property from the date of seizure until the court issued a turnover order to transfer the property to the United States.

Claimant, however, argues that the state court did exercise jurisdiction against the $99,000 in an earlier restraining order it issued in relation to the racketeering complaint the state filed on March 9, 2009, against claimant. Claimant alleges that the defendant *res*

in this case is part of the seized items subject to forfeiture in the racketeering complaint, and is therefore under the state's jurisdiction. In an attempt to demonstrate that the defendant *res* is part of the state racketeering complaint, claimant places special emphasis on particular words in that complaint and accompanying Order of Seizure and Restraining Orders. First, he argues the seizure and restraining orders issued in relation to the racketeering complaint required the seizure of all currency and that the term "currency" includes the defendant *res*. Second, he contends that the term "lockbox," as used in the complaint, applies to the safe found in McGill's apartment where the defendant *res* was found. Upon close review of the complaint and restraining order, we conclude that neither of claimant's arguments is persuasive.

Claimant argues on page 7 of his brief that the state court "exercised its jurisdiction finding that Hutchinson 'possess[es] property, both personal and intangible, located in Marion County' and 'the request for seizure of assets contained therein is GRANTED' '. . . including but not limited to all . . . currency . . . .'" Claimant's Brief at 7 (emphasis in original). However, this sentence was created by Claimant's artful piecing of phrases from various parts of the restraining order, the effect of which is to contrive an altered context and meaning. The portion of the restraining order that refers to "currency," when read correctly and in its entirety, states as follows:

> Defendants shall be prohibited from disposing of any property, whether personal, real or intangible, including but not limited to all motor vehicles, real estate, accounts, currency, and stocks or other securities of any kind held by them or any of them and are restrained from transferring or otherwise alienating their interests in said property or any of the contents thereof until further order of this

8

court.

Restraining Order ¶ 1. Thus, an accurate and complete reading reveals that this paragraph did not in fact authorize law enforcement to seize any currency but rather merely prohibited Claimant from disposing of or transferring any of his property until further order of the court. The property that was to be seized for the state forfeiture proceeding was specified in subsequent paragraphs of the restraining order, as detailed below.

Paragraph 3 of the restraining order specifies the items to be seized for the state racketeering complaint, providing in relevant parts: "[T]he following items are to be seized immediately: a. The entire contents of any lock box or bank account held in the name of any of the Defendants JP Morgan Chase Bank Account [number omitted] and any other such account located *at that institution*." b. "This order . . . shall also extend to the contents of any lockbox held by either defendant herein *at JP Morgan Chase*." c. "The agents of the Metropolitan Drug Taskforce shall then take such items from any lockbox located *at said bank* . . . ." Restraining Order ¶ 3 (emphasis added). Claimant argues that the term "lockbox," as used in the restraining order and racketeering complaint, includes the safe where the defendant *res* was found. It is clear, however, that the seizure order was not a general order of a broad scope that might also include the safe, which was located at Claimant's girlfriend's home. It was a specific order identifying for seizure the contents of accounts and lock boxes located at a particular financial institution. Furthermore, it

9

seems unlikely that the state court intended to seize the safe and defendant *res* under the racketeering complaint when at the time the complaint was filed authorities did not even know of the *res*'s existence. Authorities did not learn of the $99,000 until the anonymous phone call received some six months later. Therefore, it is clear that the state court never exercised jurisdiction over the defendant *res* or ordered its seizure as part of the racketeering complaint.

Moreover, even if the state court had seized and exercised jurisdiction over the property in the racketeering complaint, as claimant contends, his argument is moot because the property was subsequently properly transferred to federal authorities. As noted earlier, "Once a state court has assumed jurisdiction over a *res*, a federal court cannot assert jurisdiction over the same *res* until it has been transferred pursuant to state statute or by a turnover order from the state court." *$84,940*, 86 Fed. Appx. at 982. Here, the state court subsequently issued a valid turnover order and thereby properly gave this Court jurisdiction over the defendant res.

Therefore, following the reasoning of *$506,231* and our finding that the state court did not exercise jurisdiction and control over the property, we hold that the fact that the complaint for forfeiture preceded the turnover order in this case does not prohibit this Court's jurisdiction over the property.

II.     Within the Statutory Time Period.

Claimant also argues, based on the language of IC §§ 34-24-1-3, that the turnover order is invalid because a state court loses jurisdiction to pursue a forfeiture

10

action or to turnover property to federal authorities 180 days after the property was seized. According to the claimant, because the state did not file a complaint for forfeiture within 180 days of the seizure, the state has no option but to return the money to claimant at the conclusion of the racketeering complaint, pursuant to § 35-33-5-5(c).[1]

Claimant cites *Sanders v. State*, 823 N.E.2d 1214 (Ind. Ct. App. 2005) to support his proposition that the statutory time period for the state to control the property expired before the turnover order was issued. In *Sanders*, the defendant was arrested for possession of and dealing in cocaine on November 21, 2002, and $2,496 in his possession was seized. *Id.* at 1215. On September 26, 2003, the state filed a motion for release/application of the money pursuant to IC § 34-24-1-1. *Id.* On appeal, the defendant's conviction was affirmed but the court reversed the forfeiture of the money "because the action was brought almost ten months after the seizure occurred. The statute requires that an action be brought within 180 days of the seizure. IC § 34-24-1-3(a)." *Id.* Then, on August 5, 2004, the state sought to forfeit the money a second time by filing a petition for reimbursement of investigative costs,

---

[1]Claimant also cites IC § 35-33-5-5(c), arguing that if the 180-day period passes, the state must return the property following the final disposition of the cause of action. This argument fails on two points. First, as noted above, the defendant *res* in this case is not part of the racketeering complaint and is not tied to that cause of action. Second, IC § 35-33-5-5(c) does not restrict the state's ability to transfer the property to the federal government before the final disposition of the cause. Therefore, even if we were to find that the defendant *res* was part of the racketeering complaint, as claimant desires, the property would have been properly transferred for at the time of the turnover order the racketeering complaint was still pending.

11

which the trial court granted. *Id.* The court of appeals reversed, again holding that the state action was untimely filed under the statute. *Id.*

Claimant correctly asserts that, pursuant to IC § 34-24-1-3(a), the state has no more than 180 days within which to initiate forfeiture proceedings against property after its seizure. In this case, once the currency was seized, the state did not initiate forfeiture proceedings in the 233 days it controlled the property before the turnover order was issued, transferring jurisdiction to federal authorities. Thus, it is true that at the time of the turnover order issuance, the state would have been unable to initiate forfeiture proceedings. However, IC § 34-24-1-3(a) and the holding of *Sanders* address only the 180-day limit as it applies to the state's ability to file state forfeiture proceedings. Neither *Sanders* nor the cited statute provides that the state is restricted from transferring the property to federal authorities after the 180-day period.

In short, the 180-day requirement under Indiana law restricts only the state's entitlement to initiate forfeiture proceedings. Another Indiana statute, IC § 35-33-5-5(j) governs the state's ability to transfer seized property to the federal government, and it does not include a 180-day time limitation. IC § 35-33-5-5(j) ("Upon motion of the prosecuting attorney, the court shall order property seized under IC 34-24-1 transferred . . . to the appropriate federal authority for disposition . . ."). That procedure is consistent with what occurred here. Thus, while the state had lost its ability to initiate its own forfeiture proceedings after the 180-day period passed, it was nonetheless permitted to hold the property until either the final disposition of the

case or it transferred the property to federal authorities pursuant to IC 35-33-5-5(j) and IC 34-24-1-9(a).[2] No bar existed on the state's ability to transfer the property to federal authorities for the instant forfeiture action.

## CONCLUSION

For the reasons stated above, Claimant's motion to dismiss is DENIED.

IT IS SO ORDERED.

Date: _____06/17/2011_____

_SARAH EVANS BARKER_
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

---

[2] IC 34-24-1-9(a) Upon motion of a prosecuting attorney under IC 35-33-5-5(j), property seized under this chapter must be transferred, subject to the perfected liens or other security interests of any person in the property, to the appropriate federal authority for disposition under 18 U.S.C. 981(e), 19 U.S.C. 1616(a) or 21 U.S.C. 881(e) and any related regulations adopted by the United States Department of Justice.

Copies to:

Stephen G. Gray
ATTORNEY AT LAW
misstuffy@aol.com

Winfield D. Ong
UNITED STATES ATTORNEY'S OFFICE
winfield.ong@usdoj.gov